Filed 1/13/26  In re T.C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.C., a Person Coming Under the Juvenile Court Law. | H053171 (Santa Clara County Super. Ct. No. 23JD027629) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. T.C. et al., Defendants and Appellants. | |

Appellants T.C. (Father)[1] and S.R. (Mother) appeal from the juvenile court's order terminating their parental rights as to their three-year-old child T.C., under Welfare and Institutions Code section 366.26.[2]  The sole issue on appeal is whether the juvenile court and the Santa Clara County Department of Children and Family Services (Department) failed to comply with their initial inquiry obligations under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA).  We conclude the initial inquiry in this case

---

[1] Father was found to be the presumed father of T.C. at the initial hearing.  There is no question as to paternity.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

was deficient and therefore conditionally reverse the order terminating parents' parental rights and remand the matter for the juvenile court and the Department to comply with the initial inquiry requirements of ICWA.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In early November 2023, the Department took custody of then one-year-old T.C. after Mother was arrested for child abuse and several drug related offenses.[3]  At the time of Mother's arrest, Father was incarcerated in the Monterey County jail.  On the day of Mother's arrest, a social worker asked Mother and maternal grandmother whether they had Native American ancestry and both denied having any.  The next day, the Department filed a petition seeking to assert dependency jurisdiction over T.C., on the grounds that Mother's substance abuse put the child at substantial risk of harm and that neither Mother nor Father could care for the child.  The Department attached an Indian Child Inquiry form (ICWA-010(A)) indicating that its inquiry gave no reason to believe that T.C. was or may be an Indian child.

A few days later, a social worker asked Mother whether Father had any Native American ancestry and Mother responded he did not.  Mother also stated Father was adopted, did not talk about his family, and indicated she did not know of any other paternal family members who would have more information about Father's heritage.  The social worker attempted to interview Father in jail via telephone but was unable to do so before the initial hearing.

At the initial hearing, the juvenile court questioned Mother and maternal grandmother about their heritage, and both responded they did not have any Indian ancestry.  Mother also completed a Parental Notification of Indian Status form (ICWA-

---

[3] " 'In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order.'  [Citation.]  In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1046 (*In re D.S.*).)

020) indicating she did not have any Native American heritage. The juvenile court asked Mother if she knew about Father's ancestry, and she responded: "I don't know a hundred percent of what his background is, but I do know that there's no Indian or native heritage in his family. . . ." Based on its inquiry, the juvenile court found there was no reason to believe T.C. had Native American heritage or that T.C. was an Indian child. However, the juvenile court ordered the Department to interview any available relatives regarding possible Indian heritage and directed the parents to disclose to the social worker the names and contact information of any of T.C.'s maternal or paternal relatives.

A couple days later, a social worker interviewed father at the Monterey County jail and Father stated he did not have any Native American ancestry. Father made his first appearance at the November 2023 jurisdiction and disposition hearing but the juvenile court did not inquire about Father's Indian ancestry at the hearing. That same day, a social worker again asked Father about his ancestry and Father reiterated he did not have any Native American heritage.

Subsequently, a social worker interviewed Mother and Father about their family history. Mother stated she was raised by her aunt and uncle (not identified) "off and on"—the record is unclear as to whether they were maternal or paternal relatives—and that she had a younger brother (not identified). According to the Department's December 2023 disposition report, Father was removed from his mother's care at a young age and adopted (adoptive parents not identified) at age five after his mother failed to successfully reunify with him. Father "described his childhood with his adopted family as good," but the report also notes that Father stated he was "rais[ed] in the foster care system." The report does not specify when or why Father was raised in foster care nor does it indicate whether Father is in touch with his biological, adoptive, or foster family. Father has a child from a prior relationship and a social worker later interviewed the mother of that child about Father's ancestry, who stated that to her knowledge, Father did not have any Native American heritage.

3

Thereafter, a social worker again interviewed Mother about her ancestry. Mother stated she did not have contact with her aunt and uncle who raised her and therefore, the Department reported it could not conduct an ICWA inquiry with the aunt and uncle.

At the continued February 2024 jurisdiction and dispositional hearing, the trial court found there was no reason to believe or know that T.C. was an Indian child and that ICWA did not apply.

In December 2024, Mother and Father had another child together (Sibling), and the Department placed the child into protective custody due to the parents' untreated substance abuse issues. At the initial hearing in Sibling's case, the juvenile court asked both parents about their ancestry and both denied having Indian heritage.[4] Father also completed a Parental Notification of Indian Status form (ICWA-020) in Sibling's case affirming he did not have any Native American heritage. Based on that inquiry, the juvenile court found there was no reason to believe Sibling was an Indian child.

In March 2025, the juvenile court conducted a section 366.26 permanency hearing. Following the contested hearing, the juvenile court ordered Mother's and Father's parental rights terminated and selected a permanent plan of adoption for T.C. In its section 366.26 order, the juvenile court found there was no new information indicating a reason to believe or know T.C. was an Indian child based on renewed inquiry by the court and the Department.

Father and Mother timely appealed the order terminating parental rights.

---

[4] We grant the Department's request for judicial notice of (a) Father's Parental Notification of Indian Status form (ICWA-020) in Sibling's case and (b) the January 7, 2025 minute order from the initial hearing in Sibling's dependency case indicating the juvenile court questioned Mother and Father regarding their Native American ancestry before concluding that ICWA did not apply. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

4

## II.    DISCUSSION

Father and Mother[5] contend the juvenile court erred in finding that ICWA did not apply because the Department failed to comply with its initial duty of inquiry under ICWA since it did not adequately inquire of either parent or extended relatives about T.C.'s possible Indian ancestry.  The Department asserts it conducted a proper and adequate inquiry of all reasonably available family members and therefore, substantial evidence supports the juvenile court's finding that T.C. was not an Indian child.

### A.  General Legal Principles

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citations.]" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128 (*Dezi C.*).)  To address this concern, "ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*Id*. at p. 1129.)  "An 'Indian child' is defined as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' [Citation.]" (*Ibid.*)  To increase compliance with federal regulations, California enacted—and later amended—legislation that adopted various procedural and substantive provisions of ICWA.  (*Id*. at pp. 1130-1131.)

---

[5] Mother joins Father's arguments pursuant to California Rules of Court, rule 8.200(a)(5).  Mother contends that if we conditionally reverse the order terminating Father's parental rights, we must also conditionally reverse the order terminating Mother's parental rights.  (See *In re J.R.* (2022) 82 Cal.App.5th 569, 594.)

The juvenile court and the Department "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1131-1132, quoting § 224.2, subd. (a).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) Only the initial duty of inquiry is at issue here.

" 'The duty of initial inquiry applies in every dependency proceeding.' [Citation.]" (*In re K.H.* (2022) 84 Cal.App.5th 566, 597.) "The duty to inquire begins with the initial contact with the reporting party, and it continues with the [Department]'s 'first contact with the child and each family member, including extended family members.' " (*In re Claudia R.* (2025) 115 Cal.App.5th 76, 84, quoting § 224.2, subd. (b)(1); see Cal. Rules of Court, rule 5.481(a)(1) [the department "must ask . . . the parents, . . . extended family members, . . . [and] others who have an interest in the child, . . . whether the child is or may be an Indian child"].) An "extended family member" includes "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c) [adopting same definition].) Additionally, "[u]nder California law, 'an adopted person and the adopting person are, by law, in a parent-child relationship the same as a natural parent and child' [citation] . . . ." (*D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 391 (*D.S.*).) As such, the Department's duty of inquiry is not limited to only biological relatives. (*Ibid.*)

The Department "has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) However, " 'the obligation is only one of inquiry and not an absolute duty to ascertain or

6

refute Native American ancestry.' [Citation.] Agencies are already tasked with investigating the circumstances underlying the child's removal and identifying and locating the child's extended family members (§ 309, subds. (a), (e)); it is a rather simple task to ask those family members about Indian ancestry in this process." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1143; see § 309, subd. (e)(1) [if a child is removed, "the social worker shall conduct, within 30 days, an investigation in order to identify and locate all grandparents, parents of a sibling of the child, . . . adult siblings, [and] other adult relatives of the child . . ."].) "In most dependency cases, the children will not be found to be Indian children, but that determination rests exclusively with the tribes and absent a reasonable inquiry at the outset, the opportunity to gather information relevant to the inquiry is often missed entirely." (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 615.) Thus, "ensuring adequacy and accuracy at this first step is critical if the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature." (*Id*. at p. 591, fn. omitted.)

The juvenile court also has a duty of inquiry. "[O]n the first appearance upon a petition, 'the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' " (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1099 (*Kenneth D.*), quoting § 224.2, subd. (c); see Cal. Rules of Court, rule 5.481(a)(2).) The juvenile court may conclude that ICWA does not apply if it finds that the Department's "inquiry and due diligence were 'proper and adequate,' and the resulting record provide[s] no reason to know the child is an Indian child . . . ." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134, quoting § 224.2, subd. (i)(2).) "In order for the court to make a determination whether the notice requirements of . . . ICWA have been satisfied, it must have sufficient facts as established by the [Department], about the claims of the parents, the extent of the inquiry, the results of the inquiry, the notice provided any tribes and the responses of the tribes to the notices given. Without these facts, the juvenile court is unable to find, explicitly or implicitly,

7

whether . . . ICWA applies. [Citations.]" (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.) A juvenile court's finding that ICWA does not apply in a proceeding implies the Department fulfilled its duty of inquiry and that neither the Department nor the court had a reason to know or believe the subject child is an Indian child. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) However, even if the juvenile court makes such a finding, it must "reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry . . . ." (§ 224.2, subd. (i)(2).) Thus, "[w]hile this duty of inquiry is sometimes referred to as the initial duty of inquiry, this is a bit of a misnomer, as the duty 'continues throughout the dependency proceedings.' [Citations.]" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132, see *In re K.H.*, *supra*, 84 Cal.App.5th at p. 597, fn. 10 [acknowledging that it is "somewhat inaccurate" to refer to the Department's duty as an initial duty of inquiry].)

### B. Standard of Review

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' (§ 224.2, subd. (i)(2).)" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) With respect to a juvenile court's conclusion that an inquiry was adequate and proper, "[s]ome courts apply a straightforward substantial evidence test" while " 'other courts have used a hybrid standard, reviewing for substantial evidence whether there is reason to know a minor is an Indian child, and reviewing a finding of due diligence and proper inquiry for abuse of discretion.' [Citation.]" (*Ibid.*) Although the Supreme Court in *Dezi C.* did not resolve the split in authority as to what standard of review applies to these findings, it acknowledged that "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is a 'quintessentially

8

discretionary function' [*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1005] subject to a deferential standard of review." (*Id.* at p. 1141.)

" ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes." ' [Citations.]" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141; accord *Kenneth D.*, *supra*, 16 Cal.5th at pp. 1101-1102.) "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the [Department] did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the [Department] can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Dezi C.*, at p. 1141.)

When reviewing the juvenile court's finding that the Department's "inquiry and due diligence were 'proper and adequate' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134, quoting § 224.2, subd. (i)(2)), we are "not concerned with the outcome, but rather with the protection of tribal rights, including the tribes' right to determine whether a child is an Indian child." (*Id.* at p. 1144, fn. omitted.) This is because the "inquiry is not outcome oriented; rather, it is geared to ensuring that tribal heritage is acknowledged and inquired about in dependency cases. Focusing on whether there is information bearing on the outcome of the inquiry *before an adequate inquiry has even been made* frustrates the purpose of ICWA and ignores that 'tribes have a compelling, legally protected interest in the inquiry itself.' [Citation.]" (*Id*. at p. 1148.)

## C. *The Department Failed to Conduct an Adequate Initial ICWA Inquiry*

Based on our thorough review of the record, we conclude the juvenile court's implied finding that the Department's ICWA inquiry was proper and adequate is erroneous under either the substantial evidence or abuse of discretion standard.

With respect to the inquiry of T.C.'s maternal relatives, the Department did not exercise due diligence in attempting to identify or contact extended maternal family members who may have information about Mother's ancestry. Following the initial hearing, the juvenile court ordered the Department to interview any available relatives regarding possible Indian heritage. However, the record does not demonstrate that the Department thereafter endeavored to expand the scope of its inquiry to comply with its continuing duty of inquiry. The Department interviewed Mother and maternal grandmother on several occasions, but it appears the questioning never went beyond asking either relative whether they had any Indian ancestry. Additionally, while the Department indicated it was unable to reach Mother's aunt and uncle because Mother could not provide their contact information, it potentially had other avenues to obtain such information that it failed to pursue. Even though the Department was in contact with maternal grandmother from the outset of the case, there is no indication it attempted to obtain contact information for Mother's aunt and uncle from her. (See *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 787 ["the [Department] must pursue all reasonable investigative leads"].) Further, the Department does not appear to have requested that either Mother or maternal grandmother identify Mother's brother or have requested his contact information. We also note that the record is unclear as to whether Mother has any other family members besides maternal grandmother, a brother, a deceased sister, and an aunt and uncle.

Nor does it appear that the Department asked either Mother or maternal grandmother whether they could identify any other family members who might have information about potential Native American ancestry. The Department already had a

duty to investigate whether T.C. had other relatives under section 309, and therefore, asking Mother and maternal grandmother whether they could identify other family members who could have information pertaining to the ancestry of Mother's paternal or maternal relatives would have been " 'slight and swift.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1143, quoting *In re S.S.* (2023) 90 Cal.App.5th 694, 698.)  Instead, the Department appears to have relied on Mother's and maternal grandmother's denials regarding their Indian ancestry, without exercising due diligence to pursue reasonable investigative leads.  While it is true that the Department "is not required to 'cast about' for information," it also cannot escape its duty of inquiry by simply failing to investigate.  (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053, quoting *In re Levi U.* (2000) 78 Cal.App.4th 191, 199, superseded by statute on other grounds as stated in *In re B.E.* (2020) 46 Cal.App.5th 932, 940.)  Our conclusion would be different on a record demonstrating there was no one beyond Mother and maternal grandmother to ask, or if "they refused to provide any information and the [Department] exercised due diligence but was unable to identify and locate anyone else to ask." (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 604.)  But here, there is no indication the Department made a meaningful effort to identify or contact any of Mother's extended family members.  Therefore, the Department's initial inquiry as to Mother's potential Indian ancestry was deficient.

We similarly conclude the Department did not make a meaningful effort to locate or identify any paternal family members who might have information about Father's potential Native American heritage.  When the Department questioned Father about his family history, Father stated he was adopted at age five and "described his childhood with his adopted family as good."  Yet, the Department did not ask for the names of Father's adoptive parents, whether Father was in contact with his adoptive parents, or if he could provide or obtain their contact information.  (See *D.S.*, *supra*, 88 Cal.App.5th at p. 391 [the Department's "duty of inquiry under ICWA . . . is not excused simply because . . . family members may be related by adoption"].)  Nor does the record indicate

if the Department asked Father whether he had any knowledge about the ancestry of either his biological or adoptive parents. (See 25 U.S.C. § 1903(9) [defining "parent" as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom"].) There is also no indication that the Department asked Father whether he knew anyone who may have information about his ancestry. While the Department did ask *Mother* whether she knew anyone who may have information about Father's ancestry, the Department should have asked Father directly since he was available for inquiry and a better source for that information. Lastly, it is undisputed that the juvenile court failed to inquire as to Father's ancestry when he made his first appearance at the jurisdiction and disposition hearing.[6] As such, the Department's initial inquiry regarding Father's potential Indian ancestry was inadequate.

Finally, we note Father does not identify on appeal whether there are any family members who may have information about his ancestry. We acknowledge the possibility that Father may not have any information about his biological or adoptive family given he was adopted at a young age and later raised in foster care. Similarly, it is possible that neither Mother nor maternal grandmother can provide contact information for any other

---

[6] As to this point, the Department relies on *In re C.R.* (2025) 112 Cal.App.5th 793, 801-802 to argue that, even though the juvenile court did not question Father about his ancestry at his initial appearance, the court nonetheless properly found that ICWA did not apply because it asked Father about his potential Indian ancestry in Sibling's case, which occurred prior to the section 366.26 hearing in the instant case. In Father's reply brief— which Mother joins and adopts pursuant to California Rules of Court, rule 8.200(a)(5)— he concedes the juvenile court's inquiry in Sibling's case satisfies its duty under section 224.2, subd. (b)(1). Even assuming *In re C.R.* stands for the proposition for which the parties assert, bare reliance on a parent's representations regarding their Native American ancestry does not suffice. (See *Dezi C.*, *supra*, 16 Cal.5th at p. 1150 ["nothing in the statutory scheme permits the required inquiry to be halted or short circuited when a parent denies Indian ancestry"].) The Department still had an independent duty to conduct a proper and adequate inquiry, and its failure to do so cannot be cured by Father's denials about his Indian ancestry in a related case.

12

maternal relatives, and that Mother may not have any other relatives besides those briefly mentioned in the record. However, when as here, the Department fails to conduct a thorough and good faith investigation, we cannot readily preclude the possibility that there may be other reasonably available extended family members who may have information about Father's and Mother's potential Indian ancestry. (See *In re Jerry R.* (2023) 95 Cal.App.5th 388, 428 ["There may be cases in which there is no one else to ask beyond the parents, but, if that is so, the record must be developed to reflect that fact and supported by documentation"], citation omitted.)

In sum, on this record the Department's inquiry is insufficient to support the juvenile court's implied finding that the Department's initial inquiry was proper and adequate under either the substantial evidence or abuse of discretion standard. Accordingly, we hold "conditional reversal is required so the [Department] can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

### III.    DISPOSITION

The order terminating Father's and Mother's parental rights is conditionally reversed and the matter is remanded to the juvenile court with instructions to order the Department to comply with the inquiry requirements of ICWA. If thereafter the juvenile court finds that T.C. is an Indian child, the juvenile court shall conduct a new section 366.26 hearing and proceed in accordance with ICWA. If not, the juvenile court shall reinstate the original section 366.26 order.

_____

Greenwood, P. J.



WE CONCUR:







_____

Danner, J.












_____

Bromberg, J.






H053171 - In re T.C.; Santa Clara County DFCS v. S.R. et al.